# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**THEOLA HENDERSON,**
**o/b/o NEVELL THOMPSON, Jr.,**

    **Plaintiff,**

vs.                                        **CASE NO. 1:08-CV-158-MMP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration,**

    **Defendant.**

                                /

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.    PROCEDURAL HISTORY**

Plaintiff initially filed an application for SSI on November 19, 1993, alleging a disability onset date of November 10, 1993, due to myasthenia gravis. Plaintiff was found disabled on December 21, 1993. A continuing disability review was conducted in

February 1999, and Plaintiff's benefits were continued in March of 1999. A second continuing disability review was conducted in February of 2002, and in June 2002, Plaintiff was notified that he no longer qualified for Supplemental Security Income. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 8, 2005, which resulted in an unfavorable decision on October 28, 2005.

On August 11, 2006, the Appeals Council denied Plaintiff's request for review. (R. 3-5). Plaintiff appealed the ALJ's decision to the United States District Court for the Northern District of Florida, and on September 4, 2007, the Court remanded the case to the Commissioner for further review. On March 19, 2008, after another hearing before an ALJ, the ALJ issued a decision again finding that Plaintiff's condition was no longer a disability as of June 1, 2002. (R. 291). Thus, the March 19, 2008 decision stands as the final decision of the Commissioner.

**B.**     **<u>FINDINGS OF THE ALJ</u>**

The ALJ found that Plaintiff's original disabling condition has improved to the point that he is no longer disabled as of June 1, 2002. The ALJ also concluded that Plaintiff is not disabled due to any ongoing myasthenia gravis or mental retardation.

With regards to Plaintiff's myasthenia gravis, the ALJ found that Plaintiff experienced no limitation in four of the six functional domains established in 20 CFR 416.925 and 416.926. (R. 280-286). The ALJ did find that the Plaintiff had a less than marked limitation in moving and manipulating objects and his health and physical well being. (R. 284, 286). Overall, the ALJ did not find sufficient evidence to support a finding that the Plaintiff's prior impairments resulted in any limitation that met the listing.

**No. 1:08CV158-MMP/AK**

The ALJ also found that Plaintiff's low IQ and any remaining health issues regarding his myasthenia gravis did not qualify as a disability under the Act. The ALJ found that these conditions resulted in a less than marked limitation in five of the functional domains and no limitation in the remaining functional domain. (R. 289-291).

**C.    ISSUES PRESENTED**

Plaintiff argues that the IQ tests performed in 2002 at the University of Florida establish a full scale IQ of 67 which meets the listing requirements of 112.05 and the ALJ erred in finding these test results to be invalid.

In response to this issue, the Commissioner argues that the ALJ may properly disregard standardized IQ test scores which are inconsistent with other evidence in the record, such as daily activities and behavior. In the present case, the ALJ explained that he found the test results to be invalid because the test examiner noted Plaintiff to be inattentive and distracted during testing, that Plaintiff's school records establish average achievement levels in all areas with only slight problems noted in reading and math, and no diagnosis of mental retardation by school authorities. Plaintiff was also able to participate in extracurricular activities such as playing drums and martial arts with no apparent problems.

The issue thus presented is whether the Commissioner's decision that Claimant is no longer disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:08CV158-MMP/AK**

D.   **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A claimant is no longer considered disabled if the ALJ finds that the disabling condition(s) have improved or no longer result in marked and/or severe functional limitations.  In order to determine if a claimant continues to be disabled as an individual who is not yet 18 years old, the ALJ must follow a three step process.  First, the ALJ must determine if any medical improvement has occurred in the impairment(s) that were found disabling in the most recent medical determination (i.e., the comparison point decision or CPD).  Improvement counts as any decrease in the medical severity of a condition identified at the most recent CPD. Minimal changes in symptoms are not considered.  If there has been some medical improvement, then the ALJ must move on to step two of the analysis.

In step two, if the CPD was made before January 2, 2001, the ALJ must determine if the CPD impairment(s) now meets or equals the same listing that was met at the time of the CPD, as the listing was written at that time.  If it does not, then the ALJ must determine if the CPD impairment(s) now functionally equals the listings.  If it does not, then the ALJ must proceed to step three.

At step three, the ALJ must determine if the child is disabled under the current rules.  In doing so, the ALJ must consider any impairment the claimant has now, regardless of whether or not they were present at the time of the CPD.  Childhood disability is defined by the regulations:

**No. 1:08CV158-MMP/AK**

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which have lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §1382c(a)(3)(C)(1).
>
> The regulations set forth a three-step sequential evaluation process:
>
> 1. The ALJ must determine if the child is performing substantial gainful activity;
> 2. If not, the ALJ must determine whether the child's impairments are severe; and
> 3. If severe, the ALJ must determine whether the impairments meet or equal the severity of a listed impairment. 20 CFR §416.924.

If the ALJ finds that the impairments are severe, but do not meet the listing requirements, he may find that the impairments result in limitations that functionally equal the listings. 20 CFR § 416.926a. To establish functional equivalence in step 3, the ALJ must have a medically determinable impairment that results in marked limitations in two functional domains or an extreme limitation in one domain. 20 CFR § 416.926a(a). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 CFR 416.926a.

E.  **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was born on November 10, 1993. He was diagnosed with myasthenia gravis at nine months[1]. (R. 98). Plaintiff underwent hypospadias repair in April of 1997.

---

[1] An autoimmune neuromuscular disorder characterized by fatigue and exhaustion of muscles. www.medicinenet.com

**No. 1:08CV158-MMP/AK**

(R. 38). On April 11, 2002, Dr. Paul Carney determined that Plaintiff no longer suffered from myasthenia gravis. (R. 31). Since then, in subsequent doctor's visits, Plaintiff has demonstrated normal abilities with regards to his gait, motor strength, reflexes, muscle tone, and sensation. (R. 230-231; 215-216).

A Psychoeducational Report of Plaintiff was prepared in 2002, after Plaintiff continued to perform below his classmates despite being retained a year at school. (R. 111-122). His teacher had expressed concern with his ability level and his behavioral issues, particularly his inattentiveness. (R. 110). The psychologists reported that Plaintiff demonstrated below average intellectual functioning, but achievement above his intellectual ability. (R. 117). Plaintiff is in the "educable mental handicapped range," but he does have adaptive skills. Id. The team also reported that Plaintiff displayed signs of ADHD, but no official diagnosis was made.

### F. SUMMARY OF THE ADMINISTRATIVE HEARING

A hearing was held on Plaintiff's application on February 11, 2008. At the hearing, both Plaintiff, and Plaintiff's grandmother, Gheola Henderson, testified on Plaintiff's behalf. Plaintiff was represented by counsel. (R. 342). Plaintiff testified that at the time of the hearing, he was in seventh grade and attending Hogtown Middle School. (R. 344). Plaintiff's school is a charter school with a low teacher to student ratio, where Plaintiff attends classes for "exceptional students." (R. 357). Tutors are present in Plaintiff's classes to give the students one on one help with their school work.

**No. 1:08CV158-MMP/AK**

(R. 358). In addition to studying traditional subjects, Plaintiff plays the snare drum and participates in a martial arts class. (R. 346; 348).

When he is not at school, Plaintiff mostly plays inside. He completes his homework and is assigned household chores. (R. 349-350). Plaintiff testified that he occasionally has headaches. (R. 352-353). Plaintiff's grandmother testified that he frequently has headaches and it can escalate to nausea. (R. 359). She also testified that Plaintiff has trouble interacting with others in his peer group and easily becomes flustered or upset. (R. 359). Plaintiff's grandmother also observed that he has spurts of energy, but also experiences fatigue and balance problems. (360; 361).

### G. DISCUSSION

Plaintiff alleges that he still meets the listing requirements regarding his myasthenia gravis and because of his low IQ.

However, Plaintiff's medical records establish that he no longer suffers from myasthenia gravis or any significant related limitation due to this condition. (R. 31). Furthermore, Plaintiff's medical records reflect that he is not suffering from any side effects or residual problems from the myasthenia gravis. There was no evidence presented that demonstrated that Plaintiff suffered from any sort of limitation due to this condition.

The only remaining issue is whether or not Plaintiff's low IQ renders him disabled under the Act. In order to be found disabled due to one's mental retardation, a plaintiff's mental deficiency must cause "a valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant

**No. 1:08CV158-MMP/AK**

limitation of function." See 20 C.F.R. Supt. P, App. 1 §112.05(D). Although Plaintiff's intellectual functioning test scores were low, these results were inconsistent with the observations and reports on Plaintiff's functioning from his teachers and the psychologists who observed Plaintiff, and Plaintiff's self-reporting.

Plaintiff's intellectual functioning was tested multiple times in the spring of 2002. (R. 112). Although Plaintiff scored a 67 in intelligence testing, this score was not consistent with the remaining record evidence. (R. 120). The Eleventh Circuit Court of Appeals has found that "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992); citing Popp v. Heckler, 779 F. 2d 1497, 1499 (11th Cir. 1986).

To meet the listing requirements for 112.05, Plaintiff must have a valid IQ score within the range of 60 to 70 **and** a physical or mental impairment **or** a marked impairment in social or personal functioning or in maintaining concentration, persistence or pace . As the record establishes, he no longer suffers from a physical impairment (myasthenia gravis), nor does he allege any other impairment, and the ALJ found his IQ score to be invalid. Plaintiff was inattentive and distracted while the tests were being administered, and the examiners recommended that Plaintiff be retested at a later date. (R. 112). Furthermore, Plaintiff's scores with regards to his reading, oral and written language, and math were all in the average range. (R. 112-113). It is reasonable to expect that Plaintiff's scores would only increase if he were to be tested at a time when he was more attentive. Additionally, although the psychologists reported that Plaintiff

**No. 1:08CV158-MMP/AK**

demonstrated some symptoms of ADHD, Plaintiff is not alleging that ADHD is the cause of any disability.

Despite Plaintiff's low test scores, he reported to the ALJ that he was in the band at school, participates in a martial arts class, completes his homework and chores, and gets along with other children. (R. 344-354).

The ALJ properly explained the reasons he found the IQ test scores to be invalid and made appropriate reference to the record to support these reasons. Further, even if the test scores were found to be valid, Plaintiff fails to meet the other requirements of Listing 112.05, in that the physical impairment for which he was initially awarded disability benefits (myasthenia gravis) has resolved, and he specifically found no marked limitations in any of the functional domains, also referencing the record to support these findings. Therefore, substantial evidence on the record supports the ALJ's decision that Plaintiff was not disabled as described in the Act.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this ___21st___ day of January, 2010.

> *s/ A. KORNBLUM*
> **ALLAN KORNBLUM**
> **UNITED STATES MAGISTRATE JUDGE**

**No. 1:08CV158-MMP/AK**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

No. 1:08CV158-MMP/AK